| | |
|---|---|
| | **UNITED STATES DISTRICT COURT**<br>**NORTHERN DISTRICT OF CALIFORNIA**<br>**OAKLAND DIVISION** |
| SHAWN LEE HILLER and STACEY HILLER,<br><br>        Plaintiffs,<br><br>  v.<br><br>UNITED STATES OF AMERICA and DOES 1 to 20,<br><br>        Defendant. | No. C 05-01620 SBA<br><br>**ORDER**<br><br>[Docket No. 154] |

## INTRODUCTION

Before the Court is defendant United States of America's unopposed Motion for Review of Clerk's Taxation of Costs [Docket No. 154] (the "Motion"). As the Motion is unopposed, it is appropriate for resolution without a hearing under Fed. R. Civ. P. 78(b), and the Court GRANTS it and denies the Hillers all the costs sought in their Bill of Costs [Docket No. 147]. In addition, the Court had the Hillers opposed the Motion, the Court would have determined costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(a), and would have reached the same conclusion.

## BACKGROUND

**1. The 2004 Motor Vehicle Accident**[1]

This personal injury lawsuit arose from a motor vehicle accident on February 24, 2004 between a United States Postal Service vehicle and a 2004 Jeep Rubicon owned and driven by plaintiff Shawn Hiller, who at the time was a California Highway Patrol (CHP) patrolman driving his personal vehicle to a training class for his work for the CHP (hereinafter, "the accident"). As a result of the accident, Mr. Hiller sought medical treatment over the following three-year period

---

[1] These facts are taken from the Overview, Adverse Credibility Findings, and Conclusions of Law sections in the Court's Findings of Fact and Conclusions of Law [Docket No. 145 at 1-2, 6-34, 56-66], attached hereto as Exhibit "A."

leading up to trial, and he applied for a retirement from the CHP based on a finding of permanent disability made by his treating physician. In May 2006, the CHP granted Mr. Hiller's request for disability retirement.

**2. The 2007 Bench Trial[2]**

At trial, Mr. Hiller sought damages for medical expenses of $12,550. He also sought lost wages covering a 25-year period, until 2029, based on his doctor's finding of permanent disability from his job at the CHP and a lost service-connected pension that would have accrued if he worked as a CHP patrolman for those 25 years. He also sought substantial general damages, and his spouse, Stacey Hiller, sought damages for loss of consortium.

After the close of evidence, the Court issued Findings of Fact and Conclusions of Law [Docket No. 145]. The Court found Mr. Hiller was not credible, when he provided pertinent information to the doctors, at his deposition and at trial. The Court found he exaggerated the extent of his physical limitations, his complaints of pain, and the circumstances of the accident to the doctors he had seen over the prior three years. The Court found he also minimized or failed to inform them of his preexisting degenerative back condition, his previous symptoms of low back pain, and the x-rays from 2002 showing such condition. The Court found these doctors relied on the erroneous information provided to them by Mr. Hiller and the incorrect assumption that abnormalities in the 2004 MRI of his back were not present before the accident, in reaching their conclusions about his condition and treatment. As a result, their conclusions, predicated as they were on inaccurate information Mr. Hiller provided about the accident's severity and his physical condition before and after the accident, were not persuasive. His lack of credibility weighed heavily against all claims made at trial by plaintiffs.

With regards to Mr. Hiller's credibility, the Court made five adverse findings. First, it found he did not produce his writings about the accident, his condition, or his activities after the accident, as requested, during discovery. Second, he did not produce photographs of his Jeep on unpaved trails, in violation of the Court's order to do so. Third, he did not disclose his off-road driving

---

[2] *See supra* note 2.

2

activities. Fourth, he exaggerated his injury, his condition, and his pertinent medical history to the doctors he saw after the accident. Fifth, he gave incredible testimony regarding his ability to work, including light duty issues with the CHP and failing to disclose his work for Jeepers and Creepers.

The Court awarded the following damages: (1) Medical Expenses of $12,550 based on the parties' stipulation this was the total amount of such expenses. (2) Lost Past Wages: Mr. Hiller claimed lost wages from the date of the accident to the trial. For lack of evidence, the Court awarded him $7125, or $4750 per month for 1.5 months. (3) Lost Future Wages: Mr. Hiller claimed $1.3 to $1.6 million, covering 25 years beyond trial. Due to a lack of evidence and credibility, the Court awarded him nothing. (4) Lost Future Pension: The Court awarded him nothing, based on the same deficiencies in his lost future wages claim. (5) General Damages: Mr. Hiller sought $2 million. The Court awarded him $37,650, or three times the stipulated medical expenses. (6) Loss of Consortium: Ms. Hiller sought $200,000 for loss of consortium. The Court awarded her $18,750, or roughly one-half of Mr. Hiller's general damages. (7) Future Medical Expenses: Due to a lack of evidence, the Court awarded him nothing.

The Court entered judgment on October 11, 2007. [Docket No. 146.]

**3. Post-Trial Pleadings**[3]

After trial, on October 23, 2007, the Hillers filed a Bill of Costs in the amount of $22,269.18, with a supporting declaration from J. Kevin Morrison, Esq. [Docket Nos. 147-48.] Following meet-and-confer discussions, the United States submitted on, November 1, 2007, its Objections to Bill of Costs [Docket No. 149], pursuant to Federal Rule of Civil Procedure 54, Civil Local Rule 54-2. On November 20, 2007, the Clerk filed and entered its statement of taxed costs in the amount of $14,739.68. [Docket No. 151.] On November 20, 2007, the United States filed a Motion for Review of Clerk's Taxation of Costs [Docket No. 154], which is now before the Court. The Hillers filed no opposition.

///

///

---

[3] These facts are taken, in part, from movant's Motion for Review of Clerk's Taxation of Costs [Docket No. 154].

# ANALYSIS

**1. The Court grants the motion as it is unopposed.**

### A. Legal Standard

In regards to oppositions, Northern District Civil Local Rule 7-3(a) states, "Any opposition to a motion must be served and filed not less than 21 days before the hearing date." Further, the Court's Standing Civil Order warns parties that the failure to oppose a motion, is deemed a consent to the granting of that motion.

### B. Analysis

In its motion, the United States requests the Court deny the Hillers all their costs. Mot. at 2:27-3:1, 7:2-3, 9:10. Alternatively, it requests the Court tax certain costs. *Id.* at 8-9. Here, the Hillers have never filed an opposition. The Court thus grants the United States' unopposed Motion to deny the Hillers all their costs.[4]

**2. Had the Motion been opposed, the Court would have denied costs under the Equal Access to Justice Act.**

### A. Legal Standard

Costs are awarded under Federal Rule of Civil Procedure 54(d)(1), which states:

> *Unless a federal statute*, these rules, or a court order *provides otherwise*, costs--other than attorney's fees--*should* be allowed to the prevailing party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 1 day's notice. On motion served within the next 5 days, the court may review the clerk's action.

Fed. R. Civ. P. 54(d)(1) (emphasis added).

In actions by or against the United States of America, there is a federal statute that "provides otherwise." The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(a), states:

///

---

[4] Because the Court denies the Hillers all costs sought in their Bill of Costs, the Court does not address the United States' request to tax $536.48 for a Colour Drop invoice, $5.28 for color copies, $15.84 for photograph exhibits, or $30.70 for Dr. Gary Isaacson's records. *See* Mot. at 8-9.

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, *may* be awarded to the prevailing party in any civil action brought by or against the United States ... in any court having jurisdiction of such action....

28 U.S.C. § 2412(a) (emphasis added); *Neal & Co., Inc. v. U.S.*, 121 F.3d 683, 685 (Fed. Cir. 1997).

In comparing the two provisions, "[c]ourts following Fed.R.Civ.P. 54(d)(1) have acknowledged in its language a *presumption* in favor of costs to the prevailing party and an obligation for a trial court to *explain its variance* from the presumption." *Neal & Co., Inc.*, 121 F.3d at 686 (emphasis added).

In contrast, based on its language and the fact it is a limited waiver of sovereign immunity, which thus must be strictly construed, the "EAJA does *not create a presumption* in favor of an award of costs to the prevailing party." *Id.* at 687 (emphasis added). "Rather [the] EAJA vests the trial court with considerable discretion to award costs. This discretion authorizes the trial court to consider a wide variety of factors, including the conduct of the parties during trial, in reaching its costs decision." *Id.* As a result, a court:

> is *under no obligation to explain a deviation from the norm*. Rather a standard of wide discretion presupposes that the trial court may weigh many different factors without an explanation of its full decisional process. Indeed, the impressions created during lengthy litigation may defy accurate cataloguing.

*Id.* (emphasis added).

In fact, "the statute envisions that the trial court may choose to award costs or not in its full discretion" without explanation. *Id.*

In cases not involving the United States, when a party challenges a clerk's determination of costs, "Under the well-established Rule 54(d)(1) case law, the district court is charged with making a de novo review of the clerk's determination of the costs issue." *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 461 (3d Cir. 2000) (clerk's task is ministerial, and court is not bound by clerk's reasons or limited to evidence it considered).

///

Although Rule 54 does create a presumption in favor of awarding costs to the prevailing party, *Ass'n of Mex.-Am. Educators v. State of Calif.*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc), a trial court has considerable discretion in awarding or denying costs, *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 233 (1964).

If a court refuses to award costs, it *must* specify the reasons for the refusal. *Ass'n of Mex.-Am. Educators*, 231 F.3d at 591-92. In other words, the court must "explain why a case is not 'ordinary' and why, in the circumstances, it would be inappropriate or inequitable to award costs." *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003) ("A district court deviates from normal practice when it refuses to tax costs to the losing party, and that deviation triggers the requirement to 'specify reasons.'").

The Ninth Circuit has listed the following as reasons that may justify denial of costs: (1) a losing party's limited financial resources; (2) misconduct by the prevailing party; (3) the chilling effect of imposing high costs on civil rights litigants; (4) the issues in the case were close and difficult; (5) the prevailing party's recovery was nominal, partial, or substantially less than that sought; (6) the losing party litigated in good faith; and (7) the case presented a landmark issue of national importance. *Champion Produce, Inc.*, 342 F.3d at 1022-23.

**B. Legal Analysis**

  **i. Were the Court to determine costs under the Equal Access to Justice Act, it would deny them to the Hillers.**

Under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, there is no presumption for the Hillers, as prevailing parties, to receive their costs. If the Court were to determine costs under the EAJA, then for the reasons discussed below in part 2.B.ii, touching on the Hiller's misconduct and their rather low recovery, the Court would deny them their costs. Although the EAJA does not require a Court to explain its ruling, the Court would likely consider the *Champion* factors, as discussed below.

///

///

### ii. Were the Court to determine costs under Rule 54(d)(1), it would deny them to the Hillers.

If the Court were to determine costs under the lower standard of discretion provided by Rule 54(d)(1), it would still deny the Hillers all their costs. Given the facts of this matter, the only *Champion* factors relevant here would be (1) misconduct by the prevailing party and (2) that the prevailing party's recovery was nominal, partial, or substantially less than that sought.

#### a. Misconduct by the Prevailing Party

"A district court ... generally must award costs unless the prevailing party is guilty of some fault, misconduct, or default worthy of punishment." *National Info. Servs., Inc. v. TRW, Inc.*, 51 F.3d 1470, 1472 (9th Cir. 1995), *overruled on other grounds by Ass'n of Mex.-Am. Educators v. State of Calif.*, 231 F.3d 572, 591-92 (9th Cir. 2000) (en banc) (courts may consider more than just misconduct in denying fees). As detailed in the Background section, *supra*, the Court found Mr. Hiller not credible at trial, making five adverse findings, and found he significantly misled his expert witnesses. This misconduct unnecessarily delayed and complicated discovery and trial, and were the Court to determine costs under Rule 54(d)(1), this *Champion* factor would weigh heavily in favor of denying the Hillers all of their costs.

#### b. The prevailing party's recovery was nominal, partial, or substantially less than that sought.

Under a Rule 54(d)(1) analysis, where a prevailing party's recovery is nominal, partial, or substantially less than that sought, a court may consider denying costs to them. Here, comparing the Hillers' demands to their recovery, Mr. Hiller obtained nothing for future medical expenses, about 2.3% for lost past wages, nothing for lost future wages, nothing for future pension benefits, and about 1.9% for general damages. Ms. Hiller obtain about 9.4% of what she sought for loss of consortium.

In *Richmond v. Southwire Co.*, 980 F.2d 518, 520 (8th Cir. 1992), the Appellate Court affirmed the district court denying costs to a prevailing party, who only recovered one dollar, against a claim for $13,900, after having taken 24 depositions. Although the Hillers might argue they recovered a greater percentage than the prevailing party in *Richmond*, who only recovered .007% of

7

what they sought, this ignores the fact that the Hillers recovered nothing in three categories of damages.[5]

Further, the underlying policy in *Richmond* would apply here: a court may consider a disparity, especially a staggering or astronomical difference between an amount sought, and an amount obtained, as a factor to determine whether to deny costs to a prevailing party. This is because a substantial disparity may suggest a case unsuited for trial or that a plaintiff excessively exaggerated or inflated his or her claims. Thus, were the Court to determine costs under a Rule 54(d)(1) analysis, this *Champion* factor would also weigh heavily in favor of denying the Hillers all of their costs.

## CONCLUSION

Accordingly, the Court GRANTS the United States' motion and denies the Hillers all the costs sought in their Bill of Costs [Docket No. 147]. The amount of costs awarded by the Clerk to the Hillers, of $14,739.68, [*see* Docket No. 151] is hereby reduced to zero.

IT IS SO ORDERED.

February 14, 2008

                                                  Saundra Brown Armstrong
                                                  United States District Judge

---

[5] Also, this matter appears to have involved 21 depositions. *See* Docket No. 148 at 2-3 (Decl. of J. Kevin Morrison in Supp. of Bill of Costs).